## Bowdren v. State Farm Insurance Company

*Bernard M. Gross* and *Lawrence G. Metzger*, for plaintiff.
*Edward Griffith*, for defendant.

GREENBERG, *J.*, September 6, 1977—Following an appeal by defendant from the report and award of the arbitrators, this matter has come before us on plaintiff's motion for summary judgment, defendant's answer thereto, and plaintiff's reply. Since there exists no issue as to the facts, but only a question of statutory interpretation, the motion is ripe for decision.

On January 22, 1976, plaintiff, William J. Bowdren, a police officer employed by the Philadelphia Police Department, was involved in a motor vehicle accident with a third party. At the time of the accident, plaintiff was off-duty and acting in a private capacity. As a result of the injuries he sustained in the accident, plaintiff was unable to attend to his employment for 42 days and incurred medical bills in the amount of $930.

Plaintiff owned a policy of insurance with defendant, State Farm Insurance Company, which afforded him coverage pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq. Following the accident, plaintiff gave timely notice to

defendant of his claim for his medical expenses and lost wages. Defendant agreed to pay the medical expenses, but refused and has continued to refuse to pay the wage loss, contending that since plaintiff concededly continued to receive his salary under a wage continuation plan with his employer, defendant is permitted by the act to deduct the amount of such benefits from its own obligation to plaintiff-insured.

The provision of the act relied upon is that entitled Net loss, 40 P.S. §1009.206, which reads as follows:

"(a) General.—Except as provided in section 108(a)(3) of this act,[1] all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from social security (except those benefits provided under Title XIX of the Social Security Act[2] and except those medicare benefits to which a person's entitlement depends upon use of his so-called "lifetime reserve" of benefit days) workmen's compensation, any State-required temporary, nonoccupational disability insurance, and all other benefits (except the proceeds of life insurance) received by or available to an individual because of the injury from any government, unless the law authorizing or providing for such benefits or advantages makes them excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss.

"[1]Section 1009.108(a)(3) of this title.
"[2]42 U.S.C.A. §1396 et seq."

It is defendant's position that the wages plaintiff continued to receive while not working constituted "benefits . . . received by or available to an indi-

vidual because of the injury from any government," and should therefore be subtracted in calculating "net loss." There is no question that the benefits plaintiff received were paid by a "government,"[1] as that word is defined by the act. The issue here is whether the wage continuation plan under which plaintiff continued to receive his salary is the type of "benefit" that the act seeks to deduct in computing the insurer's obligation to its insured.

After careful consideration, we find defendant's position to be both untenable and unreasonable.

The benefits that may be subtracted in calculating net loss are obviously those benefits that are generally available under a specific statutory scheme. The enumeration of benefit programs in the act—social security, workmen's compensation, state disability insurance—clearly illustrates the widespread application a plan was intended to have in order that benefits flowing therefrom could be offset against a claimant's loss. The wage continuation plan offered to plaintiff by the Philadelphia Police Department[2] certainly contains none of the characteristics inferentially required by the act,

1. Section 103 of the act states: " 'Government' means the government of the United States, any state, any political subdivision of a state, any instrumentality of two or more states, or any agency, subdivision, or department of any such government, including any corporation or other association organized by a government for the execution of a government program and subject to control by a government, or any corporation or agency established under an interstate compact or international treaty." 40 P.S. §1009.103.

2. These benefits were made available to plaintiff pursuant to section 21 of the City of Philadelphia Civil Service Regulations, under authority conferred on the Civil Service Commission by the Philadelphia Home Rule Charter.

and in fact is much more closely akin to the kind of private contractual benefits commonly negotiated between employers and employes. We find support for this interpretation of section 206 of the No-fault Act in the Statutory Construction Act of May 28, 1937, P.L. 1019, art. IV, sec. 58, 46 P.S. §533 [now, 1 Pa.C.S.A. §1903(b)], which provides: "General words shall be construed to take their meanings and be restricted by preceding particular words." This court can discern no resemblance between the universality of a workmen's compensation or social security program and the limited scope of a municipal wage continuation plan.

Further, the express language of the act itself militates against the interpretation urged by defendant. Article II of the No-fault Act provides that accident victims are entitled to collect "basic loss benefits."[3] The latter is defined to include "work loss"[4] up to certain specified limits, which phrase in turn is held to comprehend loss of income. Section 103 of the act states in pertinent part that " 'loss of income' means gross income actually lost by a victim *or that would have been lost but for any income continuation plan* . . . " (Emphasis supplied.) This plainly indicates the statute's intention to exclude from any offset programs such as that under which plaintiff continued to receive his salary. We find no instruction requiring government-sponsored wage continuation plans to be treated in a different manner from similar private sector plans.

---

3. 40 P.S. §1009.202.
4. 40 P.S. §1009.103.

Lastly, we find it significant that at the time the parties contracted for insurance, defendant did not offer and plaintiff did not receive any premium reduction, even though defendant evidently intended to disclaim coverage for loss of income because of plaintiff's wage benefit plan. The effect of applying the requested offset would therefore be to create a windfall in defendant's favor, while plaintiff and others similarly situated would have purchased a no-fault automobile insurance policy offering little or no benefits. We reject out of hand the absurd and inequitable consequences that such an arrangement would foster. See United States Automobile Association v. Holland, 283 So. 2d 381 (Fla. App. 1973).

Plaintiff's wage loss, computed pursuant to the act's restrictions and qualifications, amounts to $2,046.88. Plaintiff also claims interest on this amount at the rate of 18 percent per annum under section 106 of the act, which provides for same in the event no-fault benefits are not paid within 30 days of the insurer's receipt of the proof of loss.[5] Defendant contends it is relieved of any interest obligation by virtue of the No-fault Motor Vehicle Insurance regulations, which declare in relevant part:

"No insurer shall be required to pay any interest or penalty in a case where services are provided to the Claimant and the insurer believes in good faith that the unpaid portion of the costs or charges for the services provided will be paid through a Gov-

---

5. The completed claim for benefits was mailed to defendant on September 27, 1976. Assuming its receipt by defendant on the following day, interest would begin to accumulate 30 days thereafter, on October 28, 1976.

ernment program such as Medicare within a reasonable time in the ordinary course of events." 31 Pa. Code §66.1-106(a)(2).

Defendant misconstrues the above regulation. The provision by its terms refers to payment by the insurer of costs or charges for *services* provided to the claimant, plainly referring to medical bills and allied expenses. Moreover, the quoted language is intended to negate the statutory penalty only where a bureaucratic delay confounds an otherwise good faith belief that the charges will be paid through a government program within a reasonable time. We have already concluded that a wage continuation plan is not a "Government program such as Medicare" which would permit an insurer to resist paying a properly claimed wage loss.

Finally, plaintiff's counsel claims attorney's fees under section 107(3) of the act, which states as follows: "If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended."

Not one element of defendant's argument strikes us as having a "reasonable foundation." Its interpretation is inconsistent with the language of the act, and is as well inherently inequitable. Accordingly, we believe an award of attorneys' fees is proper.

Counsel for plaintiff has presented a figure based upon the time that he and two of his associates have expended. The total charge is $1,453. The proposed fee appears to be a reasonable one. The amounts are in accord with accepted standards in Philadelphia. Defendant makes no objection either to the

amount of time expended or the hourly charges. We therefore approve the amount claimed. Plaintiff's counsel also requests a supplemental fee for his preparation of a reply to defendant's answer to motion for summary judgment. The reply was not warranted under the circumstances and we therefore reject plaintiff's claim for this supplemental fee.

For all of the above reasons, we enter the following

## ORDER

And now, September 6, 1977, it is ordered and decreed that plaintiff's motion for summary judgment be and hereby is granted, and judgment is entered in favor of plaintiff William J. Bowdren and against defendant State Farm Insurance Company in the amount of $2,046.88, plus interest at the rate of 18 percent per annum calculated from October 28, 1976.

Counsel for plaintiff is hereby awarded counsel fees in the amount of $1,453.